Josiah Kay v. The Executors of Jacob Kay.

A testator bequeathed the one equal undivided eighth part of the residue and remainder of his estate, both real and personal, to his son, J. K. " to hold and to have the issues, profits, rents and interest arising from the said *bequeath*, during his natural life, but not to have and to hold it in fee simple, to sell and commit waste thereof, and at his decease to descend to his legal heirs at law." *Held*, that the legatee took an absolute interest in the personal estate.

Bill for a legacy.    The bill states that Josiah Kay, late of the county of Gloucester, by his will duly executed, bearing date the eleventh of September, eighteen hundred and forty-one, among other things, gave and devised as follows, viz: "I do will and bequeath all the residue and remainder of my undivided estate, both real and personal, to my eight children, to be equally divided, share and share alike, to each one as named and designated as follows, viz: My son, Jacob Kay, one equal eighth part, to hold to him, his heirs and assigns for ever;" and after similar dispositions in favor of several of his children, the testator adds, "My son, Josiah Kay, living in the township of Waterford, county and state aforesaid, one equal undivided eighth part, to hold and to have the issues, profits, rents and interest from the said bequeath during his natural life, but not to have and to hold it in fee simple, to sell and commit waste thereof, and at his decease to descend to his legal heirs at law."

That the testator appointed the defendants executors of his will, who duly proved the same, and who, on the second of October, eighteen hundred and forty-three, settled a final account in the orphans' court of the county of Gloucester, whereby they

acknowledged to have in their hands on that day, the sum of twelve thousand three hundred and forty-seven dollars and twenty-eight cents, the residue of the testator's personal estate, to one eighth of which the complainant is entitled, by virtue of the foregoing bequest.

The defendants, by their answer, admit all the material facts stated in the bill, but state that they have been advised that doubts exist whether by the terms of the will, the complainant took an absolute interest in the personal estate bequeathed to him, or whether he is merely entitled to receive the interest thereof, and they submit themselves to the decree of the court, and ask for its direction, whether the legacy should be paid to the complainant or put out at interest for his benefit.

Hearing upon bill and answer.

Carpenter, for complainant.

Browning, for defendants.

Brief of complainant's counsel.

The question to be settled in this proceeding is, what interest does Josiah Kay take by virtue of the above devise and bequest as to the personal estate, or the one eighth part thereof, so bequeathed to him?

If the bequest of the personal estate stood alone, unconnected with the devise of the real estate, it would be a good limitation of personal property, and the legatee would take an estate for life, remainder to his heirs, construed in such case, next of kin: 4 *Kent*, 536, *n. 3d. ed.*; 1 *Powell on Devises*, (*by Jarman*,) 329, *note*.

Under such circumstances, it would be the duty of the executors to invest his share of the residue, and pay him the proceeds thereof during life.

But the bequest of the personal estate does not stand alone. The disposition of the real and personal estate being blended together, and the manifest intention being, that they should be

enjoyed together, the same construction must be given to the words "legal heirs" as applied to the devise and bequest of both descriptions of property. The "heir" as heir will take the whole: 4 *Kent*, 536, *note*, 3*d. ed.*; *Gwynne* v. *Maddock*, 14 *Vesey*, 488.

The words "legal heirs," in this bequest, being restricted to the same sense in which they are used in the disposition of the real estate, it becomes important to inquire as to the estate taken under this devise in the real estate; for it is a settled rule, that the same words which under the English law would create an estate tail as to freeholds, give the whole interest as to chattels : 2 *Kent's Com.* 353 ; 2 *Black. Com.* 398; 2 *Pow. Dev.* (*by Jarman*) 631.

The rule applies to those cases in which, by the application of the rule in *Shelly's case*, the terms of the bequest would, if applied to real estate, create an estate tail : *Garth* v. *Baldwin*, 2 *Ves. sen.* 646, *cited in* 2 *Pow. Dev.* 633.

Devise of real and personal estate to B. for life, without impeachment for waste, remainder to trustees to preserve contingent remainders, remainder to the heirs of the body of B., creates an estate tail in real estate, and an absolute interest in personalty : *Brouncker* v. *Bagot*, 1 *Mer.* 271 ; *S. C.* 19 *Ves.* 574, *cited* 2 *Pow. Dev.* 633.

If, therefore, Josiah Kay, at common law, is entitled to an estate tail in the real property so devised to him in connection with the personal property in question, it follows, under the above rule, that the limitation over of the personal property will be void, and he will be entitled to an absolute interest in the same.

So far as regards the words, " to have the issues, profits, rents and interest arising from the said bequeath," it is well settled that a devise of the rents and profits, is a devise of the land itself : *Com. Dig.* " *Devise*," *N.* 1 ; *South* v. *Alleine*, *Salk.* 228 ; 4 *Kent*, 536 ; 1 *Harr.* 27.

And the law is the same even in the case of a grant: *Co. Litt.* 4 *b.*

The rule seems to be the same in case of the unlimited be-

42*

quest of interest, which is the usufruct of money as rent is of land : 2 *Pow. Dev.* 639, 40.

These words therefore may be omitted in the further examination of this devise, so that in short it may read thus, " My son, Josiah Kay, one equal undivided eighth part, to hold and to have during his natural life, but not to have and to hold it in fee simple to sell and commit waste thereof, and at his decease to descend to his legal heirs at law."

This devise comes clearly within the rule in *Shelly's case*, (1 *Co.* 104.) " When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs, in fee or in tail: always in such cases the word " heirs" is a word of limitation of the estate, and not a word of purchase." 2 *Black. Com.* 242.

This rule has frequently been recognized and adopted in New-Jersey, previous to the act of eighteen hundred and twenty: 1 *Pen.* 291; 1 *South.* 303.

There is an estate for life given by this devise to Josiah Kay, with an immediate limitation to his " heirs." As under the operation of the above rule, the word heirs is to be taken as a word of limitation, necessarily, he takes the whole estate comprised in these words; if it be construed to the heirs of his body, a fee tail, if to his heirs, a fee simple :" 2 *Pow. Dev.* 429.

At common law, then, and before our statute, (*Rev. L.* 774, sec. 1,) the estate taken by Josiah Kay, in real estate, necessarily would have been either an estate in fee, or in fee tail; though by that statute the rule has been abolished, and whatever he might have taken at common law, he now by its operation, certainly takes an estate for life in the real estate, which on his death, will go to and be vested in his children.

The statute (abridged) is as follows: " In case any lands shall be devised to any person for life, and at his death to go to his heirs, or to his issue, or to the heirs of his body ; then after the death of such devisee for life, said lands shall go and be vested in the children of such devisee, equally to be divided be-

tween them as tenants in common in fee, &c." *Act* 18*th June*, 1820. *sec.* 1, *Elmer's Dig.* 130.

The above act does not apply to the disposition of personal estate, the construction in relation to which must therefore be sought for by the aid of the same rules, as prior to the passage of that act.

Does, therefore, Josiah Kay take at common law, an estate in fee simple, or fee tail? Is his estate descendible to his lineal heirs only, or also to his collateral heirs, which constitutes the difference between an estate in fee tail, and an estate in fee simple? Of necessity the one or the other, under the operation of the rule in *Shelly's case.*

Though under either construction, the operation, I suppose, would be the same, and Josiah Kay would take the absolute interest in his share of the personalty; still it seems necessary to a satisfactory result, to further investigate the subject as to this point.

The words, " descend to his legal heirs at law," are technical words, and are to be taken in a technical sense, unless there is a clear indication of their having been used in another sense; and if taken in a technical sense, under the rule in *Shelley's case,* they unquestionably, give a fee simple. If this construction be adopted, it will be necessary to reject the previous words, " during his natural life, but not to have and to hold in fee simple, &c." as repugnant to the estate granted. Cases are to be found of such rejection, thus: Devise to A. and her heirs, for their lives. The latter words rejected as repugnant: *Doe* v. *Stenlake,* 12 *East.* 515 ; cited, 1 *Pow. Dev.* 358, *note.*

But as words are not to be rejected unless actually irreconcilable or inconsistent with some rule of law ; and such construction is rather to be given, if possible, as will reconcile and give effect to all its parts ; and also, such construction should be given as will as nearly as possible effectuate the intention of the testator ; I am inclined to retain these words, and give them effect as indicating the meaning of the testator, in the

use of these words, "descend to his legal heirs at law ;" that is to say, as indicating his intention to use these words in the restricted sense of the lineal heirs of Josiah Kay.

We may resort to the whole will to ascertain whether the intention of the testator, in the use of these words, was to use them in a restricted sense. And whenever this intention can be collected from the whole will taken together; let the phraseology in the particular clauses be what it may, it has always been construed to make an estate tail: 2 *South.* 417.

Now, to Josiah Kay for life, "and at his decease to descend to his legal heirs at law," using these words in their technical sense, gives a fee simple ; but the previous expressions, "during his natural life, and not to have and to hold in fee simple," shows that he did not use them in that sense, but in a restricted sense ; of consequence in the sense of his lineal heirs, in which case, (whatever further might have been the intention,) the law raises an estate tail.

This construction receives further confirmation by referring to the previous clauses in this will, in which their respective shares are given to the other children of the testator. In those clauses, the several devises to such children are in the following form : "My son Jacob Kay, &c. one equal, undivided eighth part to hold to him, his heirs and assigns, for ever." It has been laid down by lord Eldon, as a rule of construction, that where a testator uses an additional word or phrase, he shall be presumed to have an additional meaning : 2 *Pow. Dev.* 9.

Now, the testator in the other clauses of this will, when his obvious intention was to create a fee simple estate, uses that form of words which the law has peculiarly provided for that end ; he uses the formal phraseology, "to hold to him, his heirs and assigns for ever." When he comes to the devise to Josiah, he uses other words, and obviously in order to arrive at a different result ; and therefore, in some other than the technical meaning, and clearly, collecting his intention from the context, with the view to limit the estate to the lineal descendants of Josiah : using, with a mistaken sense of its technical mean-

ing the tautological expression, "descend to his legal heirs at law."

The rule of the law overrules the intention, so far as regards the intent to give Josiah Kay a mere life estate, vesting in him, by its controlling operation, the whole estate of inheritance, whatever that may be; but this rule has, so far as I can perceive, no operation on his intention in the use of the words, "legal heirs, &c." It leaves the sense in which he used those words, to be ascertained from the context, and by the usual rules of construction; and when ascertained, then that meaning to limit and designate the character and extent of that estate of inheritance.

The rule in *Shelley's* case is not a rule of construction, but only a rule by which the character of the estate granted or devised, is fixed and defined after the meaning shall have been ascertained by the usual rules of construction. *See Hayes on Estates Tail, passim. (7 Law Lib.)*

The following is a case in point, and which was a devise of property both real and personal. A devise " to my daughter J. S. and her heirs, for ever, and not to be disposed of to none from them, but to J. S. and her heirs for ever," was decided to be an estate tail. This case is closely analogous; the words, " her heirs, for ever," being restricted to lineal descendants, in consequence of the words, "not to be disposed of to none from them," explaining and fixing that to be the sense in which they were used by the testator: *Sewell* v. *Howard*, 1 *Harr. and McH.* 45.

To return to the rule in *Shelley's case.* If the word " heirs," is taken to mean heirs of the body, of course, at common law, an estate tail is created.

" Devise to A. for life, and after his death, to the heirs of his body, estate tail executed in A :" *Com. Dig. Devise, N. 5, Salk.* 679.

If, then, the result be that Josiah Kay, at common law, would take an estate tail in the real estate, he in consequence, takes the personal estate absolutely, and is entitled to receive the same unconditionally from the executors.

But if (and it is the only doubt in the case) instead of an estate tail, at common law, under this devise he would take an estate in fee simple in the real estate, the result, so far as regards the personalty, would be the same.

Under the operation of the rule so frequently referred to, he must take either the one or the other; and the gift of the personalty being connected with the devise of the real estate, if the same words which create an estate tail as to freeholds, give the absolute interest as to chattels, a fortiori, will that be the case of a fee simple.

If in case of an estate tail, limitations over of personal property are too remote and of consequence void, of course, such will be the case after a fee simple.

Devise of all the real and personal estate; if devisor die without disposing of it, then to D. Limitation over held void; because the first devisee took a fee by the word "estate," and therefore, limitation repugnant: *Jackson and Livingston* v. *Delancy*, 13 *John.* 537; *Jackson* v. *Robins*, 16 *Ibid*, 537.

At all events, in this case, if Josiah Kay takes a fee, he takes the whole estate, and the point proceeding on the very ground that the heirs do not take by purchase but by descent, there is in this case no limitation over, and no question can be raised on the subject.

So that in both points of view, and whichever construction may be given to this devise, as in fee, or in fee tail, Josiah Kay becomes entitled to the absolute interest in the personalty, and the decree of the chancellor should be in his favor.

Costs should be paid by the executors, out of the general estate. The general rule in equity as to costs is, that whenever a testator has expressed himself so ambiguously as to make it necessary to come into court, his general assets must bear the costs: *Ward on Legacies*, 392; *Beames on Eq. Costs*, 14.

THE CHANCELLOR. The complainant is entitled to the relief sought. He takes an absolute interest in the personal estate

[Kay v. Ex'rs of Kay.]

bequeathed to him in the residuary clause of the will, and is entitled to a decree that the whole amount be paid to him. The costs must be paid out of the general estate of the testator.

Decree accordingly.